Case number 16-5194. Laura Holmes et al. Appellant to the Federal Election Commission. Mr. Dickerson, please. Good morning. In 2014, Laura Holmes and Paul Joss wanted to contribute $5,200 each to two specific candidates running in the general election. Laura Holmes and Paul Joss wanted to contribute $5,200 each to two specific candidates running in the 2014 general election. They could not do this because the Federal Election Campaign Act limits contributions made with respect to a general election to only half that amount, $2,600. And the Act does not permit money that could have been given in an earlier election to instead be given in a later election. This is the way you phrased it. I have to comment. That's not how the statute phrases it, right? It's a per-election limit, not a cycle limit. And that gets to the heart of your argument. The statute views things a little differently than you do. Isn't your challenge better directed at the regulations and not at the statute? I think not for two reasons, Your Honor. The first is that the statute very clearly says the money can only be given with respect to an election. And that number is $2,600, or was at the time. But that can be quite a few elections. Some states have very unusual processes. It could be several elections, right? Yes. And there's plenty on the record on that point. But we are challenging that number in the sense that we wanted to give $5,200 with respect to the general election. That's foreclosed by the statute on space. And that's been the consistent understanding of the statutory language since it was passed. Then how can you say that Buckley didn't understand that or didn't confront that? Well, for the same reason that the panel did not believe that Buckley confronted that, the fact that the Buckley opinion refers to the per-election limits, it refers to them as shorthand without any reference to the way they're actually structured on a per-election basis. Well, the statute, the opinion throughout says there are different sorts of limitations. There are per-election, per-year, per-election cycle. I mean, the justices knew the difference between the various statutory provisions. I think they did, and that's one of the reasons we rely so heavily on the McCutcheon opinion, is that just as the aggregate limits in that case, going back to Buckley, Your Honor, I think it's important to remember that the existence of contribution limits at all are themselves a prophylactic. The fact that generally the preferred way of dealing with corruption is to prosecute the people who are corrupt and that the court allowed contribution limits precisely because it would be difficult to identify those circumstances. But here you have, just as in McCutcheon, an aspect of the statute that hasn't been challenged, an aspect of the statute that wasn't considered explicitly by the Supreme Court, or that wasn't presented to the Supreme Court, as the panel opinion notes. Can I ask you to bear with me on this? I have a series of questions. I want to figure out exactly what the implications of deciding in your favor would be. So as I understand it, you want to let a donor who wants to give $5,200 to a party nominee after they've passed through the primary and are in the general, right? If and only if they've not given during that primary. I understand that's, yes, if they haven't given during the primary. What about a donor who wants to give the full $5,200 only in the primary and announces that's what I'm going to do, I'm not going to give anything in the general? Well, that's not our case, and I'd argue this Court doesn't have jurisdiction to reach that. I understand it's not our case, that's why I'm asking, but I don't have the luxury of worrying about waiting until the next case. If I decide your case in your favor, what would I have to do in the next case? In that next case, and I imagine there will be other next cases, but in that specific one, I don't think that our remedy requires this Court to impose a $5,200.  Do you agree that there would be an anti-corruption interest in limiting giving $5,200 in a primary? I don't know, but I suspect that's a much more difficult case. Well, I know, but tell me why it's difficult. In other words, give me an argument why it would be permissible for Congress to do it in that case and not this case. Because in that case, if this Court were to say, our logic is, in allowing someone to give $5,200 in the general election, Congress has already said you may give $5,200 to that candidate under those circumstances. To say, instead, you get to give those full $5,200 in the primary, when whether or not that candidate will advance to the general election is speculative. That is a greater degree of imposing, of second-guessing Congress's anti-corruption decision. So you agree there might be a – in your brief, you several times write the more general statement that Congress has said that $5,200 in a single check is not corrupting. You don't quite mean that, then. You agree that there would be – you agree that there would be a corruption influence in – or at least an acceptable corruption rationale against giving a $5,200 check in total, at least in the circumstance of the primary. In the circumstances of the primary, likely. Because, again, that would be Congress's determination of the proper level of a prophylaxis. Our entire point is that – So you didn't mean it when you said, several times in your brief, that a $5,200 check at one time, Congress thought that was not corrupting. We mentioned it in the context of a general election. I am not making that argument with ruse guard to a primary election for precisely that reason. What about a candidate in the general who had no primary? What do you think about that? Well, now we do have a bit of a technical problem. I mean – Not technical. This is a serious problem because we're going to – if we give you this case, we're going to get the next case. So the question is, how much of the entire structure collapses if we accept your position? Well, I think in that case, the decision to label that election a general, as opposed to a primary, is doing a lot of the work. Our argument isn't, again, that if you magically, talismanically call something a general election, you should be allowed to get $5,200. And the certified question isn't structured that way. Our point is that in the second election, whatever you call it under state law, and there's no reason to intrude upon that. What if there's no primary, no primary opponent, and therefore no primary at all? If there's no primary at all, and the general election follows immediately, the Louisiana situation, then our argument doesn't hold. There's only been one election. Congress has said in that election that anti-corruption number is $2,600 or $2,700. And you'll agree that would be a reasonable anti-corruption position for Congress? For purposes of this case, yes. Well, no, for purposes of the next case that you might bring, would you agree now that that would be a permissible anti-corruption rationale? We would be relying in a different case with different parties where I would have different fiduciary duties on a different argument at that point. What would the other argument be? The other argument would be there's been a failure by the government to prove the anti-corruption issue as a matter of fact. But at that point, again, this court would have to choose between that record and deference to Congress. So by that point, of course, we would have already decided in their favor, and part of the process would have crumbled, and therefore you would argue that that part is no longer good. This part is no longer good. So now let me ask you one more. Assume that you today want to give to somebody who you have not given to in the last cycle altogether. Congress would have allowed you to give to that person in both that person's primary and that person's general, and say we'll pass the primary and now the general. So it's a member of Congress every two years. Can you give now $10,400? Again, I think not, because that's not what the structure of the statute anticipates. The statute does talk about elections for a particular federal office, and in the context of the House of Representatives race, I think there's a little bit of laziness in this. You're not elected to the House in that sort of way. I'm not trying to be lazy. I'm trying to be honest. I didn't mean you're honest. I know. In the sense of how you're defining federal office, and federal office in this case is election from the Iowa 2nd or whatever for the 214th Congress. I think if you're going beyond the election to the specific office, whether that's a class one Senate seat from such and such a state or such and such a district, which may or may not exist in the next election, depending on how redistricting goes, to a specific Congress, to the 214th, 215th, 216th Congress, there you've got a policeable line and saying Congress didn't anticipate. We have a policeable line now. Your argument is now an administrative policing argument, and I'm asking for your underlying rationale about constitutionality. I understood your argument to be Congress said that it's not corrupting to give $5,200 at the end of the general if there had been previous elections, and Congress has said that you could have given that because you could have given $2,600 earlier in the primary. But Congress would have also allowed you to give an additional $2,600 two years earlier to the same person in the same seat. Imagine there hasn't been any redistricting. There isn't redistricting every two years. The person's running for the same seat again, and it's the same person. What is the anti-corruption rationale, or do you think there is no anti-corruption rationale, to preventing some of the $10,400 this time? I don't think the number is talismanic. Again, I think that Congress's intention and expectation of what is going to flow from the statute is what's talismanic. But Congress has an expectation in this case, right? We know that. The expectation in this case is $2,600 for the primary, $2,600 for the general, and that's it. There's nothing in the statute about transferring the money or anything. That's all in the regulations. But you're unwilling to accept, and I understand that, the statutory scheme. So why is the statutory scheme not acceptable here, but is acceptable running over two election cycles? And I understand that I'm getting pushed back on the as-applied nature of the remedy, or at least where this is going to go. There's not so much remedy that's bothering me. At least for myself, I always have to think, what's next? The rule of law requires me to apply the same logic in the next case that I apply in this case. If you can give me a line based on your anti-corruption argument, then I can rule in your favor. If you can't give me a line, I might still be able to rule in your favor, but I have to know that something else is going to happen as a result. Well, I think the line flows in some ways from the facts, which is maybe where we're having a little bit of disagreement. You know, to the extent that what's happening here is that my clients want to fully associate, to use McCutcheon's terms, with their party's nominee. Now, that's a fact-based question. That's something that arises in the general election, and that explains why they don't want to give every Republican a waste of resources in the primary in order to fully associate. That's an argument that is inherently tied to the election cycle, one. And two, to the extent that Congress anticipated and permissed that non-corrupting amount of money to go to that very candidate under those circumstances, I think we're on very firm ground in a way we wouldn't be if we went outside of what Congress clearly anticipated, which is the amount of money going to that candidate, the speculative nature of a candidate finally advancing to the general election. I don't understand that difference because I take it the logical force of your argument is I'm comparing myself to somebody else who got to contribute $5,200 to this person. I should be able to contribute $5,200 to that person too, and unless there's an explanation as to why I can't for anti-corruption reasons, the First Amendment entitles me to do it. But the chief judge's question about two election cycles presents exactly the same situation because the argument would be, well, somebody else got to contribute a key middle total of $10,400 to this person to this point. I haven't gotten to do that, so I should get to contribute the same amount. There's no anti-corruption differential. It seems like the argument, the logical import of your argument would apply across election cycles too. That's not our position and that's not the record that was developed. I feel uncomfortable going too far down the hypothetical, but I do think for purposes of my clients, that's very clearly not what they want to do. Mr. Hickerson, you're resting a lot on your as-applied packaging, and I think that a lot of the questions are probing the principle and how far it goes. For example, if you take seriously your statement that your clients want to fully associate with the candidate, Congress has defined what it is to fully associate with the candidate, and that is $2,600 per election. And somebody who is, you know, associating in the presidential election with candidate Rubio and then in the general election with candidate Trump is exercising a different associational interest than somebody who's in the primary election with candidate Trump and in the general election with candidate Trump. And so there's a logic to it, and it actually honors the associational interest of the donor more so than the scheme that you are asking to be held to. Well, Your Honor, I think there is a logic to it. The problem is that logic isn't an anti-corruption logic. I mean, part of the problem here is that we're dealing with a very old, very creaky statute that's been in judicial receivership since it was passed. And part of, you know, what's happening in the structure here is, and this is in the record, the sort of what was Congress's intention here. Well, Congress's intention probably was to allow resources and all these other arguments. But that decision was made prior to the Buckley decision and prior to the McCutcheon decision, both of which said Congress has to act not with regard to equalizing resources, not with regard to any of these other purposes, but solely to the anti-corruption rationale. But can Congress choose one way or another? They have to go annual or something like a calendar or per election or per cycle. And do they really have to show that one's better than the other in terms of anti-corruption? Yes and no. I think that the Congress does have very substantial discretion to choose how it structures things. The problem is that if it structures things in a way that clearly anticipates a certain amount of money going to a certain candidate under certain circumstances, then we're in the prophylaxis on prophylaxis problem. We're saying what additional work is being done by the decision to structure this so you can only give that money if you, you know, are lucky enough to be a Democrat in these elections. But you have to choose one or the other, say. And most states actually choose per election rather than per cycle. And you can argue back and forth about which one's better in terms of anti-corruption. I'm not sure you can really prevail, but they still have to choose, in the end, one or the other. And I don't see a great reason for second-guessing their choice, because they have to make a choice. I agree they have to make a choice. They have to make a choice, and it's hard to really defend one as better than the other in terms of anti-corruption. Therefore, I'm not, I guess the bottom-line question I have, and I'll get to the regulations, because I think that makes the case more interesting, but the bottom-line question I have is, is serving the anti-corruption interest really attainable on the question presented here of choosing one versus the other? Well, and I guess my simple answer is that it's a false choice. We're not asking this Court to impose a particular format. We're saying that once Congress does go with a format, if that format anticipates that a certain amount of money goes to a certain candidate, what additional anti-corruption work is being given by saying we can't give the check when we want to give it? That's all we're saying. We're not saying it would be better from an anti-corruption standpoint to have a per-election cycle limit. I have no idea if it would or wouldn't. That's a question of fact that no one's really litigated. But we do know that Congress anticipated exactly this amount of money going to exactly this candidate. That's true, and every time you have a per-election system. Yes, but it's the question. It's the linearity of time problem. As more elections develop over the course of the election cycle, the effective contribution limit set by Congress rises. That's the structure of the statute that's relevant. Maybe I'm missing something, but in every system where you have a primary and a general, which is basically every system, you're in essence saying that the states, and I think 27 of them do it per-election, and the federal government would have to do it per cycle rather than per-election. And again, I think not. That's the reason I had in the call with the Chief Judge. We're not claiming that you have the same right to get the same amount of money in a primary as you do in a general. No, I know, but you would say, at least for purposes of giving the whole amount of money for the general, in every one of those states that does the per-election, they would have to allow the full amount combined to be given just for the general. Yes. Again, if and only if nothing was given in the primary. Right. But I understand that there are implications in the context of general elections, and, I mean, this court doesn't bind any state, but it would, you know, presumably other courts of appeals that do might take the reasoning seriously. Well, obviously you want this rule to be established at the Supreme Court, and the point is there are 27 states that have laws that have chosen, again, choosing one or the other, and they've chosen per-election rather than per cycle. But I'm not sure how remarkable that is. I mean, recall, Your Honor, that, you know, when McCutcheon was decided, there were also quite a number of states that had aggregate limits. You know, this was something that simply hadn't been considered, and I think something that stems from the evolution of the law in this area over time. The aggregate limits also came out of the 1974 Act. They weren't reviewed until very recently. The question was never raised. And then, yes, there had to be a certain amount of cleanup once the Supreme Court announced that. But two points. One, that cleanup isn't necessary from a ruling of this court, which would give my clients, you know, their as-applied relief and allow them. And it's also important to remember we're here in a pre-enforcement context precisely because they could have done this and taken their chances with an enforcement process. So on the regulations, you're not challenging the regulations. You're relying on the regulations, as I understand it for part of your argument, to show that Congress really, I'm sorry, the FEC or the government really isn't imposing a per-election limit because they allow the transfer of the primary funds to be used for the general. And my question is, do we have any facts, as I've looked, on how often that happens, how much money is involved aggregate when that happens, what the percentage of elections in which that happens. Now I'm at sea on how often that transfer of primary funds for use in generals to exceed the otherwise applicable limit happens. I mean, the short answer is I think there is something in the record, because we had to argue about our standing and whether or not there was a possibility that similar elections would happen in the future. And we proved that at the district court satisfaction in the first round of litigation. The reason it's not here in the certified record is that the regulations and that sort of unfairness that was built into the system, that was raised as a Fifth Amendment claim, which the panel decision said relies too heavily on the regs to give this court en banc jurisdiction to consider the constitutionality of the statute, which is why we're only here on this question of when the statute says money given in connection with respect to a general election, is that a First Amendment violation? In that regard, Your Honor, I mean, recall that this court in Wagner, but also the Supreme Court in cases like Arizona Free Enterprise or Davis versus FEC, it is not uncommon for courts to package the unfair results of a statutory scheme into a First Amendment claim in the sense that is it unfair that if you gauge the opposing parties in these exact elections, you could be certain you'd be giving to your party's nominee? Yes. Is that a function of the regulations? Possibly. But more importantly, it's a symptom of the underlying lack of tailoring in the statute, which is again... Well, I thought on this argument, and tell me if this is not what you're saying, that the statute sets forth a pro-election scheme, but the regulations for 40 years have allowed transfer of primary funds to use in the general, which in effect allows a single person's money up to $5,400 to be used for the general under the regulations. And if that's true, that undermines the government's interest in doing a pro-election rather than per-cycle system. I think that is correct in the sense that... My question, my factual question was just how often that happens. We know the regulations there that allows the transfer. Anecdotally, I suspect it happens quite a lot, but only anecdotally. Well, I suspect this court could take judicial notice of FEC filings on that point. But again, since we're not really relying on that... We're on the FEC filing show. I admit I'm not confident about the FEC filing. I want to ask you about that, about the regulations. You suggested in response to Judge Kavanaugh's question that the regulations are sort of the transfer funds, so it undermines the statutory scheme, right? Do you think maybe that the regulation is driven by Doug Buckley's distinction between contributions and expenditures? Because once the county has the money and it's transferred, it's an expenditure, and therefore subject to strict scrutiny. So, I mean, I don't know if this is right or not, but the regulation actually speaks in terms of, quote, transfers by the candidate. So it sees it as an expenditure. I think that's exactly right, Your Honor. Okay, so how could that possibly undermine the statutory scheme? Obviously, there's a completely different standard at work here. Well, I think – I'm not sure I would use the phrase undermine the statutory scheme. I think I would say that this is evidence that there's no traumatic corruption rationale. Yes, but it's driven by Buckley. The FEC had no choice. In other words, it's an expenditure. It had to treat it differently. It was driven by Buckley's distinction between contributions and expenditures. It's that simple, I think. Well, I think the FEC also had no choice because the statute says you can only give money in connection with a particular election. So you have this sort of statutory baseline where they had to have some regulatory scheme to prevent money from bleeding over from the contributor to the candidate's other elections. That's sort of what concerns us, not the regulation, but the fact that that's a fair – that's an honest interpretation of the statutory language, which very clearly says you only get to give money for this particular election. To the extent the FEC allows a check to be given, that's nearly evidence that the FEC also doesn't see an anti-corruption problem with the check being given. We're not trying to get into the statutory scheme or the regulatory scheme beyond that. The FEC sees regulation as both inconsistent with the statute and unconstitutional, as you claimed in your attack on it as violating the Fifth Amendment. If that's true, how can we rely on those regulations for finding the statute unconstitutional? It may be that the statute and the regulations themselves are both inconsistent with the statute and unconstitutional. Well, I think there's no need to rely on the regulations because the regulations are, at this stage, largely irrelevant. So you're not relying on the FEC's regulations as evidence that the government doesn't think there's anti-corruption interests? In the narrow sense that the FEC regulations permit a check of this size to be given to a candidate, it is additional evidence, just like the structure of the statute itself and just like the Supreme Court's ruling in McCutcheon, which specifically held that this amount of money is non-corrupting. How can we reach that conclusion unless we know that the FEC's regulations are both consistent with the statute and constitutional? You say they're unconstitutional. So we certainly can't rely on the FEC's view at all as expressed through its regulations as a rationale for knocking down the statute, can we? I think for purposes of our First Amendment claim, we are agnostic on the constitutionality of the FEC's regulations. To the extent that they are... We are agnostic in your complaint. You told us that they were unconstitutional. You said they violated the Fifth Amendment. That's in the panel decision, right? That's correct. We lost that claim and we have abandoned it. You didn't lose that claim. You just didn't have jurisdiction to bring that claim in the Court of Appeals. You could bring it in the Supreme Court. We have not raised it here. I have a question about... We've talked about the governmental interest, but I want to understand how you articulate your client's First Amendment interest. In Buckley, it was spoken of in terms of First Amendment rights, making a contribution serves to affiliate a person with a candidate. I assume you agree with that? Yes. Okay. You keep talking about how the statute authorizes donations to a candidate in the cumulative amount, in your view, of 5,200. But the statute defines candidates in terms of those seeking nomination at the primary stage or election at the general election stage. And so it seems as though Congress has envisioned those as really two very different candidates and two very different associational rights. And so the statute doesn't actually say that you have... in the amount of $5,200. You have to bridge over the fact that we think of candidates for nomination as very distinct. And your client chose not to affiliate in a perfectly legitimate exercise of their First Amendment rights with candidates for nomination. Why is it unconstitutional for Congress to take that First Amendment articulation from Buckley, the right to associate, and say it's per election because it's a candidacy for a different thing in each election? Two answers, Your Honor, and I'd like to reserve some time for rebuttal. First, the McCutcheon Court talks both of association and of speech. And in that sense, the decision not to associate during the primary and instead to associate during the general does convey a message about my client's views in terms of the behavior of the Republican Party in these races. More importantly, I take the point, but it strikes me as a very formal argument that glides past the fact that in the real world, Congress has said you may give this check to this candidate once they've reached the general election. And the Supreme Court didn't, in McCutcheon, seem to think that that distinction was doing an awful lot of work in the statutory scheme. So do you think the Constitution requires Congress to look at them as a singular candidate for both stages? And maybe there's other stages with runoffs of the election? Or is Congress able to be consistent with the First Amendment to say there's a First Amendment right to associate and speak when someone's seeking a nomination, and what are your views on their nomination to be the party's nominee? And there's a First Amendment right to speak and to associate when they are running for the actual office. Does your position say the Constitution forbids Congress from making that distinction? You called it formalized. It seems to me actually quite relevant because they are very different elections. It may be that there's a different corruption interest in the primary versus the general elections. We don't know that because the FEC didn't carry its burden below. I'm talking about a different First Amendment interest. No, the First Amendment interest is the same. The First Amendment interest is – well, maybe I'm not understanding Your Honor's question. I assume my time is about to expire. You can answer the question. Is there a distinct First Amendment right to associate with someone as they seek nomination? And then another right to associate with them when they seek election for office because those are two very different things. You would agree there's a right at each stage, correct? Yes, but it's the same right. It's the right to fully associate. It's the same right. It's the right to say that I think this person should be the spearhead of the party, the nominee of the party, the leader of the party on this. The best I can do, Your Honor, is point you back to the Shrink, Missouri case where the court said speculation isn't enough to carry the government's First Amendment burden. I'm just saying, do you think the First Amendment compels Congress to ignore those distinctions between the two stages, or can they sort of really identify them as distinct elections, each with its own First Amendment interest? I think they can identify that. To the extent that that's a distinction that Congress created, I'm not sure it insulates itself from First Amendment attack. I'm asking you whether First Amendment requires or forbids the distinction that Congress has made between the two attacks of elections. To the extent there's no independent anti-corruption interest that lies behind that distinction, yes. Okay, I'll let you have some time for rebuttal. Thank you. You're from Memphis. Mr. Chief Judge, and may it please the Court, my name is Erin Klopach, and I am here on behalf of the Federal Election Commission. Your Honors, the facts of this case are not complicated. The plaintiffs wanted to contribute to certain candidates in their general election campaigns and to affirmatively avoid contributing to those same candidates in their primary election campaigns. The Federal Election Campaign Act enabled them to make that distinction. However, because the amount the plaintiffs wanted to contribute to their preferred candidates' general election campaigns was double the limit set by Congress, they failed clearly in constitutional right to contribute more. For over 40 years, the Supreme Court campaign finance jurisprudence has made clear that the per-election contribution limit satisfies constitutional scrutiny, and the logic of those decisions controls the outcome of this case. Indeed, there are at least three independent reasons why the question certified to this Court must be answered in the negative. First, the plaintiff's challenge depends entirely on a false premise. The individual contribution limit they challenge is not artificially bifurcated. The limit is set on a per-election basis. It applies to a variety of elections that aren't just limited to primary and general elections, but also include runoff and special elections and party conventions and circumstances. And in 2014, that limit was $2,600, not $5,200. Second, the Supreme Court has already made clear that the per-election amount of the limit does not violate the First Amendment. Neither the Court nor Congress has ever held that contributions per election in amounts higher than $2,600 are non-corrupting or otherwise constitutionally required to be permitted. And third, it was plainly constitutional for Congress to structure the limit in a manner that balances the government's compelling anti-corruption interest against recognition of candidates' need to amass efficient resources for effective advocacy in each election in which a candidate participates. So why does the FEC for 40 years allow transfer of funds from the primary election to use in the general? And anecdotally, but not in the record, it's clear that many candidates will get $2,700 for a primary that's overwhelming, and they're not going to use the money really in the primary. That money then gets transferred to the general. The person gets another $2,700. In effect, you have $5,400 being used in the general. Why does the FEC allow that given the scheme you just set forth? Right. So I think there's an important distinction which Judge Taylor referenced between the money that an individual gives to a candidate, the contribution, and then how the candidate in turn chooses independently to use that money. And commission regulations do give candidates a fair amount of leeway in how they choose to spend their contributions, but actually commission regulations are fairly consistent or consistently apply the contribution limit in terms of how. I'm going to repeat my question. Why does the commission allow this? I don't think you're saying the Constitution compels the commission to allow transfers. Certainly not. Okay. So then what is the rationale by which the commission allows money given for a primary, for a primary that may be overwhelming or barely contested, to be used in the general, thereby in effect circumventing the $2,700 limit? Why does the commission allow that? It's not our view that that is a circumvention of the $2,700 limit. I'm happy to answer your question. So one of the concerns that the commission has to be mindful of is giving candidates the freedom to raise sufficient resources for effective advocacy. And in carrying out that interest, the commission does give candidates a fair amount of freedom in how they use their contributions. It certainly may be the case that the commission could have imposed even stricter limits on how candidates choose to use their money. The fact that the commission perhaps could have promulgated a stricter interpretation of the contribution limit doesn't render the contribution limits themselves unconstitutional. Well, I agree with that. But here's analytically how I'm thinking about this. You've set forth nicely in your overview the structure Congress set forth per election. And you say there's an important interest in maintaining that. And I accept that on its face. But the government's actions over many decades have not been consistent with that structure. And if that's true, and I have a factual question about how true that is, but if that's true, that seems to undermine the importance of the government's interest in maintaining this per election structure. So I think some clarification on how the regulations work may help to address your question. So the commission's regulations, they set parameters on how candidates can use money once they're contributed. And it's not the case that someone can contribute $5,200 to a candidate during the primary election, and all of that money can then be used on the primary. So that money would need to be a general election money given during the primary must be used during the general election. Okay. But if you give $2,700, it's now $2,700 I guess, $2,700 in the primary, and that's not used, the candidate can use that in the general, and the person can give another $2,700 for use in the general. That is correct. And that regulation applies to any candidate, so it doesn't treat candidates any differently. Any candidate is free to choose to use money that has been contributed to them during their primary, on their primary election. On the risk of corruption or the importance of the interest, aren't you then getting then the candidate getting, in effect, $5,400 from one person for use in the general? Well, no, because if the money is given to a candidate for the purposes of associating with a candidate in the primary election, which I think it's important to recognize, too, we're talking about the right to associate. And so one manner that an individual may choose to associate with a candidate is through a contribution. A contribution made during the primary may demonstrate a desire to associate with that candidate during the primary. Now, the fact, independent of that, that a candidate may then choose to use that money in a different manner doesn't raise corruption concerns about the money having been given by the individual for that other purpose. In fact, it wasn't given for that purpose. You don't think that happens in the real world? I'm sure that candidates carry money over from a primary to a general, but that what the candidate makes an independent choice to do with the money is completely distinct from the contribution itself. And one of the reasons that the Supreme Court in Beckley recognized the sort of low level of First Amendment burdens implicated by contributions are because an individual that makes a contribution to a candidate does not have control over how the candidate uses that money. I guess the question is, maybe put another way, given the concern that large amounts of money are given with a nod and a wink and create appearance and or actual quid pro quo corruption risk, why doesn't the candidate have to refund to people who have supported him or her monies that are used? Well, so that's a fair question, Your Honor, and I think it's possible that the commission could require that. But I think at this point we're talking about how commission regulations work, and I do think it's just important to remind the Court that this case is a challenge to the statute. A panel of this Court has explicitly held at the certification stage that the plaintiffs are challenging a regulation that's not properly before the Court. They're not challenging the regulation. They're relying on the regulation to show that the government's interest in the per-election structure is not all that pristine because of the transfer. And to Judge Pillar's point, if the commission demanded refunds of unused primary donations, I think you'd have a much stronger case. That's not to say you don't have a good case as is, but I'm just saying the regulation is a bit of a hole. Certainly, I mean, the commission may have the authority to impose a different sort of requirement, but the question that is really the essential question raised in this case is the way that Congress has structured the limit. And we don't agree with plaintiffs that the proper inquiry is whether the structure itself serves an anti-corruption interest. What is our standard of review of this part of the structure, the timing? You know, as Judge Kavanaugh was saying, some states do apply a limit to the overall set of the overall cycle. Others, per subsidiary elections. What's our standard of review? So, the Supreme Court has addressed a very similar question in a number of cases. We think whether we're talking about this as characterized as a structure or timing or announce, it's really the same question about how Congress chooses to implement a contribution limit that the Supreme Court has made clear serves a compelling anti-corruption interest. And the court addressed that question in Buckley and in Nixon v. Strange-Mazarin and Randall and made clear that at the point at which a court has determined that a contribution limit satisfies the intermediate level of closely drawn scrutiny, the court has no scalpel to probe the particular manner in which the limit is implemented. And certainly in Buckley, in talking about the question of an overdraft challenge, about whether the amount of the limit was unconstitutional, the court specifically referenced the way the limit was structured and said, while Congress might not have structured the limit to account for the actual amount of spending on elections, its failure to engage in such fine-tuning does not invalidate the limit because if the court is satisfied some limit is necessary, it has no scalpel to probe whether a higher ceiling may not serve as well. In Nixon v. Strange-Mazarin, the court similarly recognized that the amount need not be fine-tuned. In Randall, the court recognized that we ordinarily defer to the legislature's judgment on these issues. Okay, so here I'm going to take that to be your argument that there is a closely drawn analysis of the anticorruption interest and as it sustains a contribution limit, the number has to sort of step down, you know, additional deference, no scalpel to probe on the setting of the precise number. And I guess my question is, how and why might the structure in terms of the timing also fall into that step-down extra deference, or do we have to look at closely drawn, whether that timing analysis is closely drawn? No, I actually think precedent both from the Supreme Court and lower courts suggests that looking at the question of timing receives even greater deference. So in the Burdick v. Dekushin case, which I believe was cited by appellants, that was a case involving the lack of a provision for write-in voting in Hawaii, and the plaintiffs challenged the fact that they wanted to be able to write in their preferred candidate. And the Supreme Court in that case held that any burden on voters' freedom to associate was only borne by those who failed to associate, identified the candidates they wanted to associate with at the last minute, and the court has given little weight to the interest a candidate or their supporters may have in making a late versus early decision of when to exercise First Amendment associational rights. And similarly, in the Sondheim case in the Ninth Circuit, that court, which was addressing a municipal ban on when contributions can be given, I think in that case, there was a one-year limit, and contributions couldn't be made outside that one-year period before an election, and the court says that a timing limit is even very large more of a burden than a limit on an amount. So is it your position that the position doesn't actually have to show an anti-corruption interest in the choice to go per election versus per cycle? Yes. We don't believe that a contribution limit can be sliced up and then have each independent component of it subject to that sort of First Amendment scrutiny. You would also argue, I think, that whichever is chosen serves an anti-corruption interest. In other words, if we were to say it has to serve an anti-corruption interest and not want to get sideways with the Supreme Court on that kind of thing, you would say both per election or per cycle would serve the anti-corruption interest? Absolutely. And I think one of the points that came up during my opinion council earlier, the important distinction between primary and general elections and runoff elections and special elections, that each of these contests is an independent contest. I think the experience that our country had with just the recent presidential election makes quite clear that individuals may make choices to associate or not associate with candidates during the primary phase and may make very different choices during the general election phase. I think actually in North County, the plaintiffs themselves drew that distinction in this case. The whole reason they brought this case is because they wanted to associate with certain candidates during both candidates' generals in connection with the general election and affirmatively not to associate with those candidates in connection with the primary elections. And the notion that this sort of distinction is artificial or that runoffs are exotic or extraordinary is inconsistent with plaintiffs' own experience. Just in the 2014 cycle alone that we're talking about in this case, the plaintiffs made contributions to 10 different candidates that had runoff elections. In South Carolina, they contributed to Congressman Mark Sanford, and they actually made contributions to Mr. Sanford that exceeded the $5,200 limit that they suggest is the limit that applies. And they also supported Senator Chris McDaniel in Mississippi. Just on the real-world facts, my sense is that when a primary is effectively under control for a candidate, a candidate will often hold a fundraiser before the primary is over, everyone knowing the primary is done, and try to get the max from the person who's attending that fundraiser for both the primary and the general, with everyone knowing that the full amount will be used for the general. Does that not happen? I don't know that there are specific facts in the record. I do know there are not specific facts in the record, which is why my question is, but my sense is that happens quite a bit. It may happen, and I think someone pointed out earlier, a line has to be drawn at some point, and so it was a perfectly reasonable time to draw the line at the timing of an election. Doesn't it also happen that commission regulations allow, let's say, a member of the House to take funds left over from the 2014 campaign and use them in the 2016 campaign? That is true. The statute gives a fair amount of leeway to candidates in how they can use their contributions, and so they can carry that money over from a primary to a general in the same cycle. So under the logic of kind of the regulations and undermining the government's anti-corruption interest, then if that logic is compelling, then doesn't that basically shoot a hole through the whole, you know, system in general because money can even be transferred from one election cycle to another election cycle? So who's to say then that the $2,600 or $5,200 limit really is really anti-corrupting because, you know, money can bleed over from one election cycle to another one, right? It's true when a candidate can move contributions that they have received from one election cycle to another. They can also donate that money to another candidate. There's a lot of ways in which candidates can use money that has been contributed to them. The difference between how the contribution limits work and how commission regulations governing how candidates spend money that has already been contributed to them is that one is talking about how limits on what affects the limit, affects what individuals are permitted to do in terms of how they're associating with or supporting a candidate, and the other is talking about the regulations in terms of how candidates spend their money. In that regard, if you have somebody who's writing a check in the last days of the primary for $5,200 under the old limits, to the extent the anti-corruption rationale is targeting the individual donation, does that individual have any capacity to either guarantee or know that its funds will not be used, that the $5,200 will not, that $2,600 will go to the general? Does it have any capacity to know or control whether that other $2,600 will be spent on actual primary expenses, often including, you know, the party at the hotel, but not at the primary, or any recounts or post-election litigation challenges? No, Your Honor, and to the extent that we're talking about a scenario in which a contributor is trying to extract a promise from a candidate about how that money is going to be used, I think we're getting much closer to the very corruption concerns that are the reason that we have these limits in the first place. The pension regulations do also allow money to be spent to pay off primary debt that is carried over. We're talking about standard of review with Judge Peller. He didn't address the additional argument of your opponents that this is an as-applied challenge and therefore requires a different standard of review, so two-part question. Is there a different standard of review for an as-applied challenge? And two, what's your response to the argument that this is an as-applied challenge? So, yes, if they were bringing a facial challenge, which we believe they are, then they have a burden to demonstrate that now that we have demonstrated that the statute serves a legitimate purpose, they have to demonstrate that it fails to have a plainly legitimate sweep. And we do think that facial analysis is more appropriate in this case. And I think- What is an as-applied challenge? What's the standard? Then we're looking at whether the statute is constitutional as applied to plaintiffs. Without regard to other cases. Well, no, with regard to the circumstances that plaintiffs have identified. But we think that's one of the reasons why this is properly treated as a facial challenge, because the plaintiffs really haven't identified any narrow, defining circumstances that limit this case to themselves. In their complaint, they ask for an injunction barring enforcement of the statute's supposed artificial bifurcation of the individual contribution limits. They haven't identified any particular candidates that they might want to associate with in the future. They haven't identified any states or particular races that they might be making these contributions in. So we don't even know whether the races in which they may make these contributions in the future would implicate situations involving runoff races or special elections, which is one of the reasons that we've explained why the statute makes sense to be set up in the pro-election manner that it is set up. They said that because they are identifying themselves and characterizing the statute, the challenge as applied, that it should be treated that way. But in Doe v. Reed, the court addressed a challenge to a state statute that applied to particular, it was a challenge to a disclosure, the Washington state disclosure requirement for referendum petition. And because the plaintiffs were only challenging it with respect to referendum petitions, they claimed that it was as applied. But the court recognized that because it would apply to all petitions in that category, it was properly treated as a facial challenge. We believe the same situation is presented here. The challenge that plaintiffs are bringing would invalidate the pro-election minutes in any general election contest, and that is not a limited set of circumstances. Well, they're saying it only would, their challenge only would invalidate it for contributions given to the general after the primary is over. Right, but that is a broad set of circumstances that we've discussed. It's broad, but it's not the whole thing, unless logically there's no way to distinguish. But if we were to hold it only to that limit, why isn't that an applied challenge? Well, I think similarly in the case that I was just talking about, the statute, the public records act applied to a variety of categories of records, and the plaintiffs were only challenging it as applied to a category of records that were referendum petitions. And the court recognized that because it would apply to all referendum petitions, the fact that other manners in which the statute would apply were not indicated, did not render the challenge an out-of-sight challenge. And so we think the fact that this would apply to all general election contributions renders it sufficiently broad to be treated as a facial challenge. Can I ask what's the commission's view of the role of Buckley in the analysis? Because the questions have elucidated that there's two forms of arguments that could be made. One is that it's a challenge to the amount, and another is that it's a challenge to what we've been calling structure or timing. And if we envision it as a structure timing claim and not as an amount claim, is your view that as to that structure timing claim that Buckley forecloses the argument, or is it that Buckley tells us the standard, and then under that standard we ought to rule in your favor? Our view is that the logic of Buckley and Nixon versus Sheriff Missouri and even McCutcheon made clear that their challenge fails. The panel held that it wasn't foreclosed for purposes of certification, but we think Buckley both sets out the standard and makes clear that what they are challenging, the structure of the limit, satisfied constitutional scrutiny. I think as I mentioned earlier, although Buckley talked about the amount, even in the context of talking about the amount, addressed the structure of the limit, and the question that Buckley asked was whether the limit functioned to prevent a candidate from amassing sufficient resources for effective advocacy. The plaintiff has certainly not made any such argument in this case. In Nixon versus Sheriff Missouri, addressing a similar question in the context of a state law contribution limit, the court asked whether the limit renders political association ineffective or contributions pointless. Also some points that plaintiffs have not even attempted to demonstrate here. They have simply said that we wanted to avoid wasting money on primary elections, and because we didn't want to associate in a primary, we should have the right to double our amount of association in the general, and there is no legal basis for finding a constitutional right to do that. I would just therefore like to address the McCutcheon case, which I think opposing counsel recognized that they relied very heavily on, and it's surprising that they do so, because in our view, McCutcheon does not help them. In that case, the court said on a number of occasions that it had previously upheld the per-election limit disturbing the principle objective of combating corruption, that that case does not involve any challenge to the per-election limit, and it specifically said we need those base limits. You throw in per-election there. They used the word contributions. I apologize. I was paraphrasing the decision. But they do, and they're very – Well, it's an important distinction. It's not really a paraphrase, actually. They upheld the contribution limits. They didn't address one way or another. This doesn't hurt you, what I'm saying, but I just don't think they addressed one way or another, the per-election. They used some rhetoric that's actually a little loose on 5200. I don't think that hurts you, but I don't think it's fair to characterize McCutcheon as helping you either. Well, I apologize. What I meant to say was that the court was comparing the aggregate limits, which were at issue in that case, from the limits that do apply on a per-election basis, which had been addressed. And luckily, it was drawing a distinction between how the per-election limits work, which is to restrict how much money an individual can give to a candidate, from how the aggregate limits work, which function to restrict how many candidates an individual could associate with through contributions. And although at the line that the plaintiff's quote did refer collectively to a $5,200 limit, a number of parts of the opinion make quite clear that when the court is using that $5,200 amount, it was doing math to combine the amount one could contribute separately to a primary and general, and assuming for purposes of that case that an individual had made both of those contributions so that it could demonstrate how many candidates an individual would be able to make those two collective contributions to. If there are no further questions, we would just emphasize that the plaintiffs will have a choice in this case to associate with their state, not to associate with their favorite candidates to their extent permitted by law. They had a right to do that, but it was not a violation of their constitutional rights to permit them to do so. Thank you. I know there's no time left, but your opponent has kindly left you two minutes, which will cease you. Just so she doesn't feel bad, I would have given it to you anyway. Well, hopefully I'd have an opportunity to pay that back. I have a question for you. Of course, at the end of your argument, you said something along the lines of that the timing and pro-election decision had to be justified by an anti-corruption interest, and that's sort of the way that the arguments are pursued here. And I'm wondering whether that's the only kind of rationale that can fit. Now, I appreciate other kinds of rationale, equalizing the playing field, et cetera, are not okay. But isn't being sensitive to other constitutional concerns a set of reasons why Congress can decide to do it pro-election rather than pro-cycle, do it timing in another way? So what I have in mind is in Randall, the concurring opinion by Justice Thomas and Justice Scalia say that a pro-cycle election contribution limit would be constitutionally problematic. And they say because that would substantially advantage candidates in the general election who did not face a serious primary challenge, which they then say in practice will express more speech by challengers than by incumbents on the theory that incumbents don't generally face a primary challenge. So if we think about what they've done here, they meaning Congress, it seems to me there are at least legal protection and First Amendment arguments for why they did it the way they did it. Not necessarily that it compelled it, but that these are acceptable rationales. So the equal protection argument is the one we've been talking about, the one I've been talking about. It's not what you call an equalizing resources argument. It's a making sure that no primary opponent is put in a better position, somebody without a primary opponent is put in a better position, and therefore unfair from an equal protection point of view than one with. And from a First Amendment, the argument is that ensuring candidates who also run in a primary are able to raise funds adequate to compete in each phase of the election cycle. That's a First Amendment argument. So these are not what the court generally has said are inappropriate. These are constitutional concerns. Maybe they would justify going either way, cycle, not cycle, your way, Congress's way. But are these inappropriate concerns? I'm not going to say they're inappropriate, but I do think they're speculative. I think we're giving Congress an enormous benefit of the doubt to take a statute from 1974 that was structured within four corners that no longer exist. And we recall that the challenge to the contribution limits, in part in Buckley, was because there were expenditure limits on contributions. Outside speech was banned. The overall context in which Buckley made this, or Buckley, excuse me, Congress made this determination was a very different world. And reverse engineering legal arguments that weren't really fairly presented by the government here in order to give Congress the benefit of the doubt strikes me as more deferential than... Well, you don't have to have thought anything about that. They were concerned, obviously, about the statute being upheld under the Constitution since they put a direct pipeline to this court and then to the Supreme Court. And there was no doubt that the First Amendment was going to be an important issue because that was a dispute at the time, and there was no doubt the protection with respect to challengers and opponents, et cetera, would be important. Those were the issues at the time. Now, it's true they didn't know how they were going to come out, and they certainly didn't know how it was going to come out 40 years later. But the underlying concerns that we be fair between incumbents and non, which speaks in equal protection today, or that we give a candidate the ability to compete when they've gone through a rough primary, which speaks today in a First Amendment sense. Those can be rationales even if they didn't have those labels at the time, can't they? Arguably, but that's not the remedy we've asked for. I would suggest by... No, it's not the remedy you asked for. Your argument was that we could only look at a corruption interest in order to uphold this, what you described as a timing, right? And I'm asking you, is that correct? Isn't it also correct we can look at whether this may serve other constitutionally appropriate interests, one of which is being sensitive to constitutional concerns? The Supreme Court has never said yes to that. That's correct. And by analogy, Your Honor, I mean, I would say that this is similar to, say, the public financing realm, where the court has said public financing is perfectly constitutional. You can do that. That's a policy choice. But if you make that policy choice, you then have to structure this in a way that itself accords with the First Amendment. That's yours in a free enterprise case. And in that sense, I don't know if that answers your question, but I feel like the other team, we agree that in some ways the card of this case is a scalpel to probe language in Buckley. The difference is that in Buckley, which is, of course, a facial challenge, and in Shrink, Missouri v. Nixon and in Fallhammer and all these other cases, the plaintiffs came to the court and said, we think this number is too low. Make up a new one. And the courts have said, you know, we're not going to do that. This is a judgment of Congress's or the state legislature's on what the appropriate prophylaxis is, and we're not going to substitute our own judgment on what that number is. The difference here is that we're not just supplying a number we pulled out of thin air. We're supplying a number that came out of the structure of the act. Can I ask you one question about that number? So there's been some talk this morning about the regulation that allows the transfer of primary funds to the general election. Maybe I misunderstood your theory, but as I understood your theory, you don't care about that. You'd be making the same argument even if there were no allowance for transfer from the primary to the general, even if it were cordoned off strictly so that you could only use $2,600 in the primary and only use $2,600 in the general. You'd still be making the same argument, which is that, look, by the time we get to the general, somebody has gotten the chance to spend $5,200 on this candidate. I should have that same chance. I should be allowed to spend the entire $5,200 in the general. Transfer is just not a part of your argument, as I understood it. I think that's right. In your reply brief, so I read your argument as – I agree with what Judge Trinovason said in the sense that I read your argument as making the broader argument that even if there were no regulation, it's still unconstitutional. But you do say in the plaintiff's therefore cite to FEC regulations as evidence that the commission recognizes that donating $5,200 in a single check is not corrupting. Is that still part of your argument or not? It is still part of our argument. But again, the unfairness that's built into here goes away if we get the remedy we want. If we can give twice as much when we give nothing – twice as much in general when we give nothing in the primary, there's no unfairness in how the various candidates are being treated. That doesn't have to be a Fifth Amendment outcome. That can be a First Amendment outcome. But doesn't that answer then Chief Judge Garland's question to you at the outset, which is that if they said, well, in 2012, there wasn't really a big challenge to this person, so we didn't give them any money. But in 2014, there was a legitimate challenge, and so we wish to fully associate with them. So in the general, we want to give $10,400 because, you know, we didn't – we elected not to associate with them during the 2012 election cycle. Plus, you know, in our favor, showing that this isn't really anti-corrupting, you know, the regulations allowed 2012 money that was left over to be transferred into the 2014 fund. So there should be no – there should be a violation of our First Amendment rights to prevent us from giving, you know, $10,400. And that's not our view because, again, we think that would be asking this court to provide a scalpel to probe exactly the scope of what Congress has declared non-corrupting. That's not where we are. We're in a specific election context, which could have been done as an enforcement challenge. If we were here on an appeal from a criminal prosecution, God forbid, we'd be making exactly this argument. This particular activity is a First Amendment protected activity, and the government's interest is not closely drawn. Your clients could have written a check for $10,400 and made the same argument in the complaint, and we'd have that question right before us. And I think that, again, the dividing line that we – the dividing line we rely on is that Congress anticipated this check to this candidate, and it didn't anticipate that check to that candidate. And so there's no need to get into the scalpel to probe area. There's no need to second-guess that. How do we know Congress didn't anticipate the $10,400 check, but they did the $5,200 check? Because of the way candidate is described in the statute, it's tied to a particular election, and you had elected to a particular office, and previous elections – It doesn't say particular office. It says two federal offices. It doesn't say a federal office. It just says two federal offices, federal office meaning Congress – The Senate, the House, or Senate. So if you're running for Congress in 2012, it's the same federal office as when you're running for the seat in 2014, the way that this is defined. And I'm not sure I agree with that as a matter of statutory interpretation, Your Honor. Well, tell me how in the statute I'm wrong. What words in the statute support your reading and not mine? It doesn't say to a federal office. It doesn't say anything about a specific federal office. In the sense that candidate is tied to election, and in the sense that this has been the lived experience of the statute for 40-plus years, I think that's a dividing line the statute anticipates. Well, if candidate is tied to an election, then how does your argument make any sense? Where does – and just to follow up, you said that Congress contemplated $5,200 check. Where is that in the statute? In the fact that almost all general election candidates first pass through a primary and are permitted to take that amount of money by that point. But that's not in one check. There's nothing in the statute that would permit it in one check. It says the limitations now apply separately with respect to each election. And the fact you can't give it in one check is why we have standing to challenge the statute. Okay, so then it can't be true that Congress intended or contemplated $5,200 in one check. And I apologize for the shorthand, which is ironic in the context of this case. No, my point was simply that Congress did anticipate $5,200 in an election cycle going to a candidate in the general election. They anticipate this because this is most of their experience as incumbents. You don't run against primary challenge. What about 7,800 in one cycle? I mean, what about the primary candidate who has to do a runoff and then go into the general? Is it your position that your clients must be able to give 7,800 in the general to a person who arrives in a general after having done a primary and a primary runoff? I think that would follow from our arguments in a way that the primary or the previous election would not. Is there no further? Never mind, go ahead. I can't. I'm done. Okay. We'll take that. Thank you all very much.
judges: Garland, Henderson, Rogers, Tatel, Brown, Griffith, Kavanaugh, Srinivasan, Millett, Pillard, Wilkins